## In the Matter of Joseph B. Nichols.

A special act of the General Assembly, admitting a tort debtor, committed to jail upon execution, to take the poor debtor's oath, and enabling the justices to administer it to him, in order to his discharge from prison, is not unconstitutional and void.

Where the first citation of such a debtor to his creditor has been dismissed, by the justices, for want of jurisdiction, under the general law, a second citation, after the special act was passed, need not recite the passing of the special act; this not being a "change of the circumstances" of the applicant, within the meaning of section 17, Ch. 198, of the Revised Statutes.

THIS was an application for a writ of *habeas corpus*, to be issued to the keeper of the Providence county jail, for the relief, from imprisonment in said jail, of the applicant. A rule to show cause having been obtained, it appeared that Nichols, the applicant, had been committed to said jail on the twelfth day of March, 1863, on an execution out of this court, for five thousand dollars damages and costs, recovered against him by one Solomon A. Champlin, at the September term of this court, 1862, for enticing away from him, his, (said Champlin's) wife; that the applicant, having been once refused the poor debtor's oath, on account of the nature of the cause of action for which he was imprisoned, petitioned the General Assembly for, and obtained, the passage of, the following private act, for his relief:—

"Upon the petition of Joseph B. Nichols, praying, for reasons therein stated, to be released from Providence county jail, and for other relief,—

" *Voted and resolved,* That the prayer of said petition be, and the same hereby is, so far granted, that the justices, authorized by the tenth section of the 198th chapter of the Revised Statutes to administer the oath prescribed by the eleventh section of said chapter, to poor debtors, are hereby authorized to administer said oath to the said Nichols, upon his present commitment to the Providence county jail upon an execution in favor of Solomon A. Champlin, of the city of New York, issued out of the Supreme Court for said county of Providence, in the same manner, and with the same effect, as if the said Nichols was committed for debt, within the meaning of the first section of said chapter. Provided, that upon examination in the same manner as provided in said tenth section, the said justices shall be satisfied that the said Nichols would be entitled to have said oath administered to him, if said commitment was for debt within the meaning of said first section of said chapter, the said Nichols causing the said Champlin to be cited, as provided in said chapter for citing creditors of poor debtors, and executing an assignment as in said chapter provided."

After the passage of the above act, the applicant obtained a new citation to his committing creditor, the said Champlin, for a discharge from his imprisonment upon taking the poor debtor's oath, which citation did not recite any change of circumstances since his first citation, and on the twelfth day of March, 1864, was, by the justices sitting on said citation, admitted to take said oath ; but doubts having been suggested to the keeper of the Providence county jail, of the validity of the special act under which said justices administered said oath, and of the discharge, he had refused to liberate said Nichols from jail, until said doubts had been resolved by the judgment of the court.

*Payne & Colwell, for the applicant.*

*James Tillinghast, for the committing creditor :—*

I.   This is not a case in which the petitioner is entitled to the writ as of right, being committed on execution in a civil cause. Rev. Stats. chap. 201, § 2.

II.   The petitioner is rightly detained in custody, the discharge

under which he claims to be released being void, for want of jurisdiction in the justices. *First.* The citation was defective. As appears by the jailer's return, there had been a previous citation to this creditor upon this same commitment. This citation contains no recital of any change of circumstances since that dismissal. The special act, even supposing it valid, does not relieve the petitioner from compliance with this requisite of the general statute. Rev. Stats. chap. 198, § 17. *Second.* Under the general law (chap. 198, § 16), the justices, as they had decided on the first citation, had no jurisdiction in this case, and the special act relied upon is unconstitutional and void. 1. It is the exercise of judicial power, and so falls within the case of *Taylor & Co.* v. *Place*, 4 R. I. 324. The proceeding before the justices, under the poor debtor's act, is a judicial proceeding. The discharge by them, not only relieves the body from arrest, but works a change in the form of the execution itself, which the court, in issuing an *alias*, is obliged to follow. The justices, therefore, are a court, in the constitutional sense of the term, though not a court of record. To hold otherwise, as they exercise judicial powers, would make the act establishing them (the poor debtor's act) itself in conflict with section 1st of article X. of the constitution. Now, this special act takes away the discretion of the justices, as to whether or not this matter is within their jurisdiction, under the general law. It compels them, indeed, to take jurisdiction in a case where they have already decided they had none, thus forestalling their judgment. The jailer's return, on file, shows that the justices so understood it, and so expressed themselves in giving judgment, and so it is made by the general statute (Rev. Stats. chap. 192, § 1), which compels all inferior tribunals to take jurisdiction and render judgment, notwithstanding the constitutionality of any act is called in question. This is an unconstitutional exercise of judicial power. *Holden* v. *James*, 11 Mass. 396 ; *Lewis et al.* v. *Webb*, 3 Greenlf. 326 ; *In re Picquet*, 5 Pick. 65 ; *Ward* v. *Barnard*, 1 Aiken, 121 ; *Lyman* v. *Mower*, 2 Vt. 517 ; *Keith* v. *Ware*, 2 Vt. 174 ; *Starr* v. *Robinson*, 1 Chip. 257 ; *Kendall* v. *Dodge*, 3 Vt. 360 ; *Dupy* v. *Wickwire*, 1 Chip. 237 ; *Wally* v. *Kennedy*, 2 Yerg. 554 : *Officer* v. *Young*, 5

Yerg. 320; *Tate* v. *Bell*, 4 Yerg. 202; *Lane* v. *Dorman*, 3 Scam. 238. 2. Again, this act is in conflict with section 5th of article I. of the constitution (bill of rights), which provides that "every person within this State ought to find *a certain* REMEDY, *by having recourse to the laws*, for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely, and without purchase; *completely* and *without denial;* promptly and without delay, *comformably to the laws.*" Under this, the Assembly are prohibited from suspending the general laws (as in this case is attempted to be done) as between *particular litigants.* This is entirely distinct from that class of acts, *e. g.*, special acts, granting powers to executors, guardians, trustees, &c., to sell and change investments. Compare cases above cited, especially *Holden* v. *James*, 11 Mass. 402; *Lewis* v. *Webb*, 3 Greenlf. 335-6. 3. Again, this act is in conflict with section 2d of article X. of the constitution, which gives the several courts "such jurisdiction as may, from time to time, *be prescribed by law.*" This jurisdiction cannot, therefore, be constitutionally changed by special legislation, as between particular parties. 4. This act is void as impairing the obligation of the contract of the judgment, and by taking away all substantial effective remedy for its enforcement, particularly in view of the general statute (Rev. Stats. chap. 226, § 18), giving the creditor, in these cases, the right to the benefit of the personal labor of the debtor for the payment of his debt, and in view of the general policy of the State in regard to torts of this nature, as shown by a comparison of the several poor debtor's acts which have, from time to time, been enacted, which show that, as the facilities and tendency to the commission of this class of private wrongs have increased, the General Assembly has, from time to time, while ameliorating the cases of poor contract debtors, held this class of offenders to stricter accountability to those whom they have wronged.

AMES, C. J.* The main objection to the liberation of the applicant is, that the special act, under which he was admitted to

---

* Mr. Justice Shearman sat with the Court in this case.

the poor debtor's oath, is unconstitutional and void. The *first* ground of this objection is, that it is an assumption of judicial power, forbidden to the General Assembly by the constitution. *Taylor & Co.* v. *Place*, 4 R. I. Rep. 324. It certainly does not assume such power over the action in which the applicant has been committed ; since that has gone to judgment and execution, and the act does not disturb either. It assumes that the applicant is a tort debtor, lawfully committed to jail on execution, and proposes to relieve him from imprisonment, if unable to satisfy the execution, upon like terms extended by the law to poor contract debtors, who, by taking the poor debtor's oath, have given satisfactory evidence of their inability to pay. Nor, as we construe it, does the act compel the justices to administer the oath to the applicant, but merely confers upon them the jurisdiction so to do, leaving all questions as to the legality of the act, or of their doings under it, as open to them as they are to us ; and, hence, is as purely legislative in its nature, as the general act empowering them to administer the poor debtor's oath to poor debtors by contract. All judicial discretion over the matter of the application, is reposed in the justices, and the whole force of the act is spent, in enabling them to exercise it, according to law, in this particular case. Any other construction of it, would confound all distinctions between acts judicial, and acts legislative, in their character. *Taylor & Co.* v. *Place*, 4 R. I. Rep. 332–336, and cases cited ; *Picquet, appellant, &c.*, 5 Pick. 65.

The *second* ground of objection to this special act, that it contravenes the fifth section of the declaration of rights, prefixed to our constitution,—which, in substance, guarantees to every person in the State a remedy for injuries "conformably to the laws,"—assumes that the act in question is no law—in the sense of this section—an assumption that would render void every private act whatsoever. We think that this presses the meaning of the clause much further than was designed. Although, in a free government, every man is entitled to an adequate legal remedy for every injury done to him, yet the form and extent of it is necessarily subject to the legislative power ; and, cer-

In the Matter of Joseph B. Nichols.

tainly, no one has yet supposed that a creditor had a vested interest in the imprisonment of his debtor for life, to enforce the payment of his debt. In every civilized government where such a remedy exists at all, it is alleviated and terminated in some way, according to circumstances, as humanity and justice require; and every one who employs the remedy, employs it with the knowledge that the imprisonment of a debtor, whether for contract or tort, is subject to this legislative discretion. The whole system of insolvent and poor debtor laws is based upon this idea; and the extension of either, to the relief of one imprisoned for debt of any sort, has never been supposed to interfere with any vested right of the creditor, or to impair the obligation of his contract with the debtor. *Sturges* v. *Crowninshield*, 4 Wheat. 122, 200; *Mason* v. *Haile*, 12 Ib. 370. In the latter case, it will be noticed, that the act in question was a special one of the General Assembly of this State, reviving a repealed insolvent act in favor of an imprisoned debtor.

These cases dispose, too, of the *fourth* ground of objection to this act, that it impairs the obligation of the contract of the judgment, within the inhibition of the constitution of this State, and of the United States. A judgment in an action for a tort, however, is not a contract any more than the cause of action was; but follows the nature of the cause, as a judgment in an action of contract does. If it had been, a release of the debtor from imprisonment, upon the taking of the poor debtor's oath, could not impair it, as long as, in this case, a full remedy is left against the property of the debtor, present and to be acquired. *Sup.*

The last objection to this act is, that it contravenes the second section of article X. of the constitution of this State, declaring that "the several courts shall have such jurisdiction as may, from time to time, be prescribed by law." For the reasons above given, we see no reason to doubt the legality of the special act in question; or that the justices were, on that ground, empowered, under the clause of the constitution just recited, to exercise the additional jurisdiction conferred by it.

The remaining objection to the liberation of the applicant under the discharge granted to him by the justices, that his

second citation did not recite "some change of circumstances after the taking out of the first citation," as required by the Revised Statutes, Ch. 198, § 17, is not supported by the section referred to. The first citation was neither "withdrawn" by the applicant, nor "tried" by the justices; but dismissed by the justices for want of jurisdiction over a commitment for tort, to remedy which want of jurisdiction the special act was passed. This was not so much a "change of circumstances" in the applicant, as of the jurisdiction of the justices. See *Angell* v. *Robbins and others*, 4 R. I. Rep. 493, 505, 506; *Eastwood* v. *Schroeder and others*, 5 Ib. 388, 390–393.

For these reasons, we overrule the objections to the liberation of the applicant, and order that the rule to show cause upon the keeper of the Providence county jail be made absolute, and that a writ of *habeas corpus* issue to him, to bring up the applicant for his discharge.